### B. J. McHENRY v. THE STATE.

No. 3965. Decided November 11, 1908.

**Murder—Charge of Court—Manslaughter—Time of Provocation—Adequate Cause.**

Upon trial for murder where the evidence showed threats by the deceased towards the defendant and other menacing acts some time before the homicide, and at different times before the killing, a charge of the court which confined the provocation upon which adequate cause was based to the time of the commission of the offense, and limited the jury in determining this question to matters and things which then happened, and failed to charge that they could look to all the facts and circumstances in evidence, was reversible error. Following Swain v. State, 48 Texas Crim. Rep., 98.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*M. B. Briggs* and *Warren & Briggs,* for appellant.—On question of court's charge on manslaughter: Cited cases in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Upshur County charged with the murder of one Alex Earp, Jr. On trial he was convicted of manslaughter, and given a term of five years confinement in the penitentiary.

The evidence, in a general way, shows that appellant with his family, including several sons, was at the date of the homicide living in the country on a farm belonging to one Harrison. That more than once before the crime alleged, a portion of the fence on the place had been burned, and that this led to some unpleasantness between appellant and Earp, growing out of some suggestion that Earp was connected with burning the fence. According to the testimony of appellant, a day or so before the homicide deceased came to where he was and wanted to know what he had him pulled for burning the fence for, to which he replied that he had not accused deceased of burning the fence. That to this remark of appellant deceased replied, that "he nor any of his men had anything to do with setting fire to the fence, and that by God he would kill any man that accused him of setting the fence afire." Thereupon appellant says: "I saw that he was mad and seeking a difficulty and I spoke to the boys saying, 'Let's go home' and they all quit work and started away. That as he did so deceased remarked to him: 'If I ever catch you working on this fence again I will kill the last one of you. I will get you the first rattle out of the box and bring old man Ennis along to get the boys.'" He further testifies that the next morning, the day of the homicide, he went out to work first. That about the time he arrived at the fence he saw some teamsters, of whom deceased was in charge, going by where he was. That he spoke to them and they spoke to him in a friendly way. That about the time the teamsters had all gotten well by, Ennis, who was driving the middle team, turned and started back towards where he was, but an old man by the name of Davis caught him and shoved him back. He also by his testimony places some of the teams in a position where they were close to him though not in sight. He testifies that on the morning in question he carried his gun to the field fearing that he might have some occasion to defend himself against deceased. That after he had been working on the fence a little while deceased came to him on horseback and talked to him about the fence, and finally said to him, "What is that thing?" pointing to the gun. That he, appellant, then picked up the gun and said, "If this thing offends you I will move it," and he set the gun some two panels away. Deceased then remarked that the holes in those gun barrels looked like flour barrels to him, and at the time appellant told him to go on away. That deceased then remarked: "I wonder why that mob don't come on, they are plotting too damn much to suit me," and as he made this remark he looked back down the road in the direction where the other teams were and from which he had come. That he then picked up his gun and told deceased to ride on and let him alone. That deceased replied, "I will not do it." That he then said to deceased, "Alex, for God's sake leave here," and deceased replied, "By God I will not do it. I have got business here to attend to

and I am going to attend to it." That he again said to deceased, "For God's sake leave." That deceased then replied, "Leave here, you son-of-a-bitch." "And as he said this he (deceased) shifted his bridle reins from his right to his left hand and threw his hand back to his side, or hip pocket, and as he did so I fired." It appears from the testimony of C. R. Davis that at the time of the homicide he was from 150 to 200 yards north of where appellant was working on the fence, and just out of view; and from the testimony of C. R. Davis, it is shown that he and other teamsters were south of where the defendant was working on the fence, and just out of view, over the hill.

Many questions are raised in appellant's motion for a new trial, and the charge of the court is complained of in many respects. We think the charge of the court is subject to some criticism in that it does not very distinctly instruct the jury that in judging of apparent danger from deceased that they must look at the transaction from the appellant's point of view, though we are not prepared to say that this charge is so erroneous as would justify us in reversing the case, but in view of another trial we think it better for the court to give a fuller instruction to the jury on this question.

We believe, however, that the charge of the court on the subject of manslaughter was both erroneous and hurtful. On this subject the court instructed the jury substantially as follows: "Manslaughter is voluntary homicide, committed under the immediate influence of sudden passion, arising from an adequate cause, but neither justified nor excused by law.

"By the expression—under the immediate influence of sudden passion, is meant: That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation." After other statutory requirements in relation to manslaughter, the court, in the 21st paragraph of his charge, thus applies the law of manslaughter to the facts of the case:

"Now if you shall find from the evidence that the defendant shot with a gun and killed Alex Earp, Jr., in Upshur County, Texas, on or about the 26th day of February, A. D. 1907; then if you further find beyond a reasonable doubt, that such killing was not justifiable, under the law of justifiable homicide hereinbefore given you in charge; then if you find that at the time he fired the fatal shot his mind was aroused to such a degree of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection; and if you further find that such state of mind was produced by some condition or circumstance in evidence which was capable of arousing in the mind of a person of ordinary temper such a degree of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection, you will, in that event, find the defendant guilty of manslaughter, and assess his punishment in the penitentiary for not less than two nor more than five

years." While no written instruction was requested by appellant on this matter, it appears by bill of exceptions that after the evidence had all been introduced, and before the jury retired, the defendant by his counsel orally requested the court to instruct the jury as to the law of manslaughter as applicable to the facts in this case, and in substance, that in determining the adequate cause they could consider the threats, if any, of the deceased previously made and all the circumstances in evidence in connection with the acts of the deceased, if any, at the time of the homicide, and cited the court to the case of Swain v. State, 86 S. W., 335, as laying down the law on the issue applicable to the facts in this case. It has been settled in this court for many years that it is not only proper, but often required that the court should, in submitting the issue of manslaughter, instruct the jury, in effect, that in determining whether or not at the time of the killing the mind of the person charged was under the influence of sudden passion arising from an adequate cause, they should look to all the facts and circumstances in evidence. It is undoubtedly true, as the court instructed the jury in the 17th paragraph of his charge, that the provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation, but it is often held important in determining the extent of the provocation that the jury should be authorized and instructed to look to the facts and circumstances in evidence arising at the time or preceding the killing with a view of determining what was the state of mind of the accused at the very moment of the killing. It is true, that in the 21st paragraph of the court's charge they are instructed. "If you further find that such state of mind was produced by some condition or circumstance in evidence which was capable of arousing in the mind of a person of ordinary temper such a degree of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection, you will in that event find defendant guilty of manslaughter," etc. But the jury, in view of the preceding paragraph of the court's charge, must have understood this last quoted paragraph to be in harmony with the instruction that the provocation to which the court referred must have arisen at the time of the commission of the offense, and that they were limited in determining this question to matters and things which then happened. See Swain v. State, 48 Texas Crim. Rep., 98; 86 S. W. Rep., 335; Neyland v. State, 13 Texas Crim. App., 36; Howard v. State, 23 Texas Crim. App., 265; Orman v. State, 24 Texas Crim. App., 495; Cochran v. State, 28 Texas Crim. App., 422; Baltrip v. State, 30 Texas Crim. App., 545.

For the errors pointed out, the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*

[Motion for rehearing overruled.—Reporter.]