JOHN REINHARDT V. THE STATE.

No. 838. Decided November 30, 1910.

Rehearing Denied January 11, 1911.

**1.—Murder—Charge of Court—Manslaughter—Adequate Cause.**

Where, upon trial of murder, the evidence showed numerous conditions and circumstances to reduce the homicide to manslaughter, it was reversible error in the court's charge to limit the jury to a single condition and circumstance instead of directing them to consider all the facts, conditions and circumstances in evidence. Following McHenry v. State, 54 Texas Crim. Rep., 477, and other cases. Ramsey, Judge, dissenting.

**2.—Same—Charge of Court—Self-Defense—Threats.**

Where, upon trial of murder the evidence raised the issue of threats it was reversible error not to charge upon this phase of the case in submitting the issue of self-defense. See opinion for facts held sufficient to raise the issue of threats. Ramsey, Judge dissenting.

**3.—Same—Charge of Court—Graduated Punishment—Manslaughter—Insult to Female Relative.**

Where, upon trial of murder the defendant was convicted of manslaughter and his punishment assessed at five years in the penitentiary, the failure of the court to submit all the conditions and circumstances in evidence showing adequate cause including deceased's former insult to defendant's wife as it bore on defendant's mind after the second insult, was reversible error, because the jury might have found the minimum punishment if they had been properly charged upon the evidence in the case.

Appeal from the District Court of Hardin. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dougherty, Conley & Gordon* and *V. A. Collins,* for appellant, filed an able brief in which they cited all the cases cited in the opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant shot and killed Ed Cantrill in the town of Saratoga, in Hardin County, for which the jury allotted him a term of five years in the penitentiary for manslaughter.

The facts disclose that appellant and deceased had been intimate friends for quite a number of years, and also discloses several acts of friendship on the part of appellant towards deceased in getting him employment at different times. It is further disclosed that deceased had corresponded with the wife of appellant when she was a girl, and also that he had boarded in the family of the wife of appellant before her marriage to appellant. Appellant and his wife had been married about six years. The friendly relations had continued between the parties up to the night prior to the homicide. The deceased had married about two years prior to the tragedy, and the relations between the parties had continued up to the night of the 3d of August, the homicide occurring on the evening of the 4th of August. On the night of the 3d of August appellant went out into the oil field to talk with a friend with reference to obtaining employment. Across the street from appellant's residence lived a neighbor by the name of Jett, whose little boy was sick. At the invitation and request of Mrs. Jett, Mrs. Reinhardt went to the Jett residence to assist in attentions to the sick child. To this appellant not only assented, but requested his wife to go and remain until he returned from the oil field when he would call and escort her home. When he approached the house where his wife was he also noticed the deceased at the Jett residence. He, appellant, from the rear end of the house saw his wife enter the kitchen, followed by the deceased. She it seems had gone in there to wash her hands after administering some medicine. While in the room deceased approached appellant's wife and said to her that he intended to kiss her or die, and while she was washing her hands he seized and did kiss her. This outraged the feelings of appellant. He immediately went in the house and engaged in a personal difficulty with deceased. Deceased escaped and ran away. The following morning appellant went into the oil fields again seeking employment. About 12 o'clock or thereabouts he returned to his home, when his wife informed him that the deceased, accompanied by a friend, had twice passed their residence armed with a sixshooter, and looked into the house in such a manner as to arouse her attention. Appellant went to the postoffice and returned. After dinner he was absent from the house and re-

turned about 3 o'clock, when his wife handed him a note written by deceased to her. This note is in the following language:

"Saratoga, Tex. Aug. 4, 08.

"My Darling one: I will try and scratch you a few lines. Sweetheart I want you to let me hear from you at once. Let me no the news darling. Its a good thing I was in the shape I was in last night for him of course I ran and all I could do was to protect my eyes. But dear my running is all over dear let me no what you are going to do or what you want to do. I will furnish the money. So Bye bye,                    As ever

Your own."

Immediately upon receiving this note appellant went across the street to the Jett residence, secured his pistol, where it seems it had been kept by Mr. Jett, put it upon his person and went down on the streets, and in about twenty-five or thirty minutes he shot and killed deceased. There is a peculiar and very unusual incident shown by this record. Appellant's wife was testifying on the trial of the case for bail under the writ of habeas corpus, which occurred in the city of Beaumont. While being cross-examined by the State the record narrates that she fainted and died at 2:30 o'clock on September 1, Her testimony was reproduced by appellant on the trial of this case, and forms a part of the statement of facts. She testified, in substance, that the relations of the families had been friendly, and to the fact that she had when a girl corresponded with deceased, and that he had boarded in her father's family, and that after her marriage to appellant the friendly relations continued to exist up to the night of the 3d of August; that deceased had married two years before the homicide; that the relations between the families continued of the same nature, and that on two occasions when appellant's wife wanted to raise some money, deceased had offered her $25 to quit her husband and go with him; that deceased had declined to let her have money on furniture which she offered as security, but offered her $25 if she would go with him to Beaumont and quit her husband. This she says she repelled, but did not inform her husband until after the occurrence on the night of the 3d of August. She testified in regard to the acts of the deceased on the morning of the 4th of August in twice passing her house in company with a friend, and to the further fact of his being armed and his actions and deportment, all of which she communicated to her husband before the tragedy. Appellant stated that after he read the note that he "knew it was all in with him;" that "one of them would have to die," and that when he armed himself he expected that one of them would be killed, and in fact he intimates that one of them, if deceased remained in town, would have to die. After arming himself appellant started down the street and passed two of the State witnesses in front of a drug-

store on the corner of two streets, one running north and south and the other east and west. He was walking rather rapidly, going in the direction of where deceased was talking to an old man named Rogers, who was sitting in his hack. Rogers testified that deceased was talking to him with reference to carrying him to the depot the following day, deceased intending to go to Beaumont to have his eyes treated. He seems to have had some trouble with one of his eyes, and had previously been to Beaumont for treatment, and that he intended to go the next day for continued treatment. There is considerable discrepancy in the evidence as to the actual position deceased occupied at the time appellant was approaching him. Some of the witnesses show that his foot was on the step of the hack or carriage with his right hand on a post, the carriage being close to the sidewalk; that deceased was facing southwest while appellant was approaching him from the east. Some of the evidence goes to show that he may not have had his foot on the step, but was standing by the post at the edge of the sidewalk. It seems to be practically agreed, however, that he was facing southwest, which threw his left side diagonally to appellant as he approached. It is also shown on the part of the State that as appellant approached and got within six or seven feet or within a short distance of deceased, he jerked his pistol and began shooting, firing four shots, three of which took effect in the body of deceased and one in one of the horses being driven by Rogers. One of the shots entered between a line drawn down the left side and the spinal column. The other two entered more squarely in the back. It is also in evidence that two of the shots struck deceased after he fell, and that he fell face downward. The evidence further discloses that the deceased was armed with a pistol, and when his body was turned over the pistol was lying under his breast, as was his right hand, the pistol and the hand being not far apart. One of the witnesses testified the pistol, however, was not entirely out of his shirt front, but was partially so. The evidence for the State, in substance, shows that the deceased was shot before he knew of the approach of the appellant, and facts were introduced to show that fact. Appellant's evidence, some of which he detailed himself, is to the effect that as he approached, the deceased slightly turning his body, looked around at appellant and reached for his pistol. When he did that appellant jerked his pistol and began firing. Appellant states as he approached deceased, deceased looked at him, threw his hand for his pistol, and that he drew his pistol immediately, and, to use his expression, "beat him to it." That it was a question that one of them must be killed then, and he succeeded in getting his pistol first. It is also shown that deceased carried his pistol inside his shirt, that is, that is the conclusion to be arrived at from the testimony, but when he fell the pistol was lying under him according to most of the testimony, though one witness states it was only partly out of his shirt at the time his body

was turned over. This is a sufficient statement of the evidence to bring in review the questions presented.

1. There are two questions of vital importance, we think, that need discussion. First, that the charge on manslaughter is too restrictive; and, second, the court failed to charge in connection with the law of self-defense the law of threats. The court, after giving the stereotyped definitions of adequate cause and sudden passion, gave the following: "The following is deemed adequate cause: Insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide; and when it is sought to reduce the homicide to the grade of manslaughter by reason of insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide, it must appear that the killing took place immediately upon the happening of the insulting conduct, or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the party killed after having been informed of such insults. . . .

"Now, bearing in mind the foregoing definition of manslaughter and the instructions under this head, if you believe and find from the evidence before you that the defendant unlawfully killed the said Ed Cantrill by shooting him with a pistol, the same being a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, and further you find that such killing was done under the influence of passion aroused by insulting words or language (verbal or written) or conduct of the said Ed Cantrill toward the defendant's wife, then you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary not less than two nor more than five years."

Exception was reserved to this charge because it is too restrictive and does not charge the jury the law governing the case as raised by the facts and the evidence, because numerous conditions and circumstances are in evidence sufficient to reduce the homicide to manslaughter, and the court in his charge above quoted limited the jury to a single condition and circumstance instead of directing them to consider all the facts, conditions and circumstances in evidence before them, and because the court, in the charge quoted, failed to marshal each and all of the grounds known as adequate cause or causes under the statute or which might become adequate cause, and further, because the court failed to charge as a portion of the law of manslaughter that the jury could take into consideration the threats made by deceased toward defendant, viewed from the standpoint of the defendant, and take into consideration all the conditions, facts and circumstances surrounding the case so as to reduce the homicide to manslaughter, and because said charge as given influenced the jury in assessing the highest penalty for manslaughter, whereas had the correct principle of the law governing said subject been given

and charged to the jury by the marshaling of the adequate causes
introduced in evidence, only the minimum penalty would have been
imposed, at least, the jury, under the law, could have considered the
same for the purpose of mitigating the punishment in case they found
for manslaughter.  We are of opinion this charge is too restrictive.
While it is true the insulting conduct on the night of the 3d of
August on the part of deceased toward appellant's wife would not
afford adequate cause on the following day, because he witnessed it
and engaged in a personal difficulty over it, yet it could be taken
into consideration in view of the note that had been written appel-
lant's wife by deceased, and the insult contained in the note should
have been viewed from the standpoint of the previous trouble and
insult, and the other facts in the case showing the conduct of the
deceased the day after the trouble the night before, and in the
morning before the difficulty, might have entered into the condition
of appellant's mind at the time of the homicide.  Had appellant
been given the minimum punishment of two years, the charge on
manslaughter might not have been sufficient error to require a reversal,
but the jury gave appellant the maximum punishment of five years.
All these matters entered into the case and evidently entered into
the mind of appellant before and at the time of the tragedy.  He
had not only witnessed the insult the night before, but had resented
it vigorously.  An intimate friend of years standing had violated the
sanctity of his marital relation by the grossest insult to his wife and
this had been repeated in a most offensive manner in the note written
the following day.  He had been by the house of appellant twice
armed and acted in such a manner as to arouse the suspicions of
his wife as to his intentions, all of which had been communicated
to appellant, and, of course, all this would naturally enter into the
condition of appellant's mind at the time of the homicide.  See Mc-
Henry v. State, 54 Texas Crim. Rep., 477; Swain v. State, 48 Texas
Crim. Rep., 98; Neyland v. State, 13 Texas Crim. App., 33; Howard
v. State, 23 Texas Crim. App., 265; Orman v. State, 24 Texas Crim.
App., 494; Cochran v. State, 28 Texas Crim. App., 422; Baltrip v.
State, 30 Texas Crim. Rep., 545.  In the condition of this record
we are clearly of opinion the charge on manslaughter is too restrictive
and that all facts and circumstances should have been submitted to
the jury in regard to the question of manslaughter.

2.  The court gave a charge on self-defense, omitting the law of
threats.  Complaint is urged against the charge as given because it
is of a negative character instead of an affirmative presentation of
the law in regard to this phase of the homicide.  This upon another
trial will be avoided.  In regard to the omission of the court to charge
on threats, we are of opinion appellant's contention is correct.  A charge
on this subject should have been given.  It is unnecessary here to repeat
the evidence, as we think it has been sufficiently stated as bearing upon
this question.  While the threat contained in the note quoted written

by deceased to appellant's wife is not direct and positive, yet the case is so environed by the attendant circumstances in regard to the matter that we are of opinion that the charge on threats should have been given. Deceased had the night before engaged in a personal difficulty with appellant over the insult of the wife of appellant, and had fled from the fight. The condition of affairs between himself and appellant was thus definitely fixed. The matter had become crucial between them. Deceased had written the insulting note which could mean nothing but an aggravation of the trouble the night before, and of his determined purpose to have appellant's wife go away with him, and that it carried the idea that the next time the trouble occurred he would be in position not to run, as he states the running was all over with him. This in effect was a notification to appellant that there was to be serious trouble. Appellant understood it to be a threat against his life, and so expressed himself and so testified. We believe this construction of the language of the note was justified on the part of appellant. While the State's evidence excludes the idea of self-defense, yet the evidence by the defendant indicates that he did not shoot until deceased was getting his pistol. It is true that appellant had expressed the idea that one of them would be killed or had to be killed unless the deceased left town, but the intention to kill is not sufficient. There must be an act showing that he did something to execute that purpose to kill in order to cut him off from resisting an assault or threatened attempt on part of deceased. If appellant approached deceased and shot, as claimed by the State, self-defense would not be in the case; but if he approached the deceased and before making any demonstration to shoot, deceased reached for his pistol it would not deprive appellant of his right to defend himself.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, Judge (dissenting).—1. I can not concur in the opinion of the court holding that there was error in the charge on manslaughter in that said charge was too restrictive or in its holding that if it be conceded there was such error, that since the jury found him guilty of no higher grade of offense than manslaughter, that such error should be held harmful. It will be noted that the court directly instructed the jury that if the killing was done "under the influence of passion aroused by insulting words or language (verbal or written) or conduct of the said Ed Cantrill toward the defendant's wife, then you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary not less than two nor more than five years." Again, the court had instructed the jury as follows: "The following is deemed adequate cause: Insulting words or conduct of the person killed toward a female relation of

the party guilty of the homicide." In this case it appears beyond doubt or question that the killing occurred on the first meeting after appellant was advised of the receipt by his wife of the note copied in the opinion. We have a case, therefore, where the uncontradicted evidence showed that the killing was on the first meeting, and where the jury have found the existence, under proper instructions, of a cause deemed and definitely fixed as adequate by the law. It has never been held, I think, certainly it ought never to be held, that it is necessary in any case to charge the jury that all the facts and circumstances of the case may be looked to with a view of determining whether adequate cause exists, except where the facts relied on as constituting adequate cause are not made so by express law, but such a charge should only be given and is only required to be given where the facts occurring at the date of the homicide do not, as a matter of law, constitute adequate cause, but where for their proper interpretation it is essential that the jury should, in finding the fact of adequate cause, view the instant facts occurring at the time of the homicide, in the light of all that had occurred. Where the facts relied on are equivocal, uncertain, in doubt or not manifestly such as in themselves and of themselves to constitute adequate cause, then it is often important that the jury should be authorized and directed that in passing on the issue as to whether in fact such acts and conduct constitute adequate cause they may look to all the facts and circumstances in evidence before them with a view of deciding whether in fact there is adequate cause. But where the facts which must be relied on to reduce the offense to manslaughter are, as a matter of law, adequate cause, and the jury are so instructed, it would seem idle to further instruct them that in determining whether such facts constitute adequate cause they might look to all the other facts and circumstances in the case. Such a charge would rather minimize the instruction of the court that the given fact or facts did constitute adequate cause, and instead of being beneficial to a defendant might, under some circumstances, be confusing and hurtful.

2. Again, I think it evident in this case that if it should be conceded that the charge of the court in the respect pointed out was erroneous, that since the jury found appellant guilty of manslaughter such error would not constitute any ground for reversal. They have found under the instructions given that, appellant was guilty of manslaughter. The only object and end to be attained by the instruction which it is claimed the court should have given was to enable the jury to fix and determine whether the killing, if unlawful, was manslaughter, or of some higher grade. When with reference to the charge of the court they have determined that the offense is manslaughter, on what basis of fair reason can it be contended that the failure to give a charge whose only office was to enable them to determine this fact, which they had already found favorable to appellant, was harmful to him? It is not a case where any evidence was re-

jected which would put him in a more favorable light. We have not infrequently held that where notwithstanding the jury had found a given state of case or fixed the offense of a given grade, that where testimony admissible in his behalf had been rejected, which, if admitted, would have put him in a more favorable attitude that where less than the smallest term had been allotted him, that this might constitute such error for which his cause might be reversed. But it ought never to be applied to such a case as we here have.

3. Nor can I agree to the ruling of the court in respect to the matter of threats. It is not claimed that there were any threats proved in the case unless such proof is found in the letter or note copied in the opinion. It was the contention of appellant in the court below, and it is his contention here, that this letter raised, as a matter of law, the issue of threats. I do not think so. It occurs to me that the letter fairly construed does not fairly or of necessity show threats; that it contains no suggestion of any offensive action on the part of deceased, but is rather consistent with the idea that if again attacked he would not again run. It may be that considered with reference to the other facts and circumstances in the case that the jury might properly have interpreted it as raising the issue of threats. Being a written instrument, in a measure it speaks for itself, and yet its true intent is to be interpreted in the light of the attendant circumstances. If there had been an instruction requested charging the jury that if they believed that the true intent of this note, construed in the light of all the circumstances, was to threaten the life of appellant, that in such event they would consider his case under the law of threats as applied to the doctrine of self-defense, but this is not the contention here. Appellant's contention is that in itself and of itself, construed in the light of the other circumstances, that the letter contained a threat. Personally, I would not so construe it even when viewed in the light of all the circumstances, and this evidently was the opinion of the learned trial court. Indeed, I am in doubt as to whether the issue as to the letter containing a threat should have been submitted to the jury at all, but if this question had been raised I am not sure but that there was evidence in the record sustaining such a contention.

ON REHEARING.

January 11, 1911.

DAVIDSON, PRESIDING JUDGE.—On a previous day of this term the judgment herein was reversed and remanded for another trial for reasons stated in the original opinion. The State moves for a rehearing and, among other things, urges error in the opinion rendered wherein it was held that the trial court erred in not charging the jury that all the facts and circumstances of the case should be looked to in determining whether adequate cause existed. One of the statutory grounds of adequate cause did exist, and this was uncon-

troverted, and upon this the court predicated his charge, excluding all other facts and circumstances. It is contended that inasmuch as the jury found the fact that adequate cause did exist by their verdict in finding appellant guilty of manslaughter, therefore it would have minimized defendant's defense on the submitted adequate cause if they had been instructed to consider all the other facts and circumstances in making up their verdict. To this contention we can not agree. The facts are, we think, sufficiently stated in the original opinion, but to recapitulate those facts to some extent we deem proper here.

Appellant and the deceased had been warm, personal friends for years. On the night previous to the homicide he had seen personally the insulting conduct by deceased to his wife and engaged in a personal difficulty with him at the time. The next day the deceased passed his house in the manner indicated in the statement in the original opinion, which was during appellant's absence, and this was called to his attention by his wife. Subsequently, the same day deceased wrote the note set out in the original opinion reiterating the insulting conduct with an offer to the wife to carry her away, offering her money, etc. This was communicated to appellant and a little later in the evening the fatal difficulty occurred. This difficulty occurred at the first meeting after he had read the note written by deceased to his wife. Now, the contention of the State is that this being an adequate cause, and the jury having convicted of manslaughter, the law was complied with fully and appellant could not complain, and in fact that had the court given the charge to the jury to consider all the other facts and circumstances, it would have minimized his defense of manslaughter as against murder. This question came before the Supreme Court of Georgia in Biggs v. State, 29 Ga., 723, and was so completely met and answered that we reproduce the following quotation from that case. That opinion was by one of the greatest lawyers, who has had the honor to grace the bench in any State or sit upon any court in the Federal Union, Judge Lumpkin. He says:

"The husband had heard and seen the personal indignity offered his wife the night before. He permitted Parish to escape, with threats of punishment should he remain in the city. The very next morning, at the breakfast table, he unblushingly resumes his seat in the immediate neighborhood of his intended victim. Was it human to keep cool in such a situation? To see the man who had attempted to desecrate the family altar, the night before, seat himself within two chairs of his wife! And was it not right and proper, in order to account for his violence, to give in proof to the jury the occurrences of the preceding evening? To shut out the scene which transpired in the bedchamber is to deprive the jury of the power of appreciating the transport of passion kindled in the bosom of Biggs by the presence of Parish."

The Biggs case perhaps may be considered the leading case on this subject, and has been followed by this court notably since Miles v. State, 18 Texas Crim. App., 156. Under the contention of the State appellant would be deprived of the previous occurrences before the jury and their effect upon his mind in viewing the transaction at the time of the homicide. Perhaps one of the strongest reasons why the mind was infuriated by the note was the fact of the occurrences on the previous evening and the intermediate occurrences between that occasion and the time of the homicide. Had the jury been instructed with regard to these extraneous matters which necessarily entered into the mind of the appellant, it is possible and fully probable that his punishment, although convicted of manslaughter, might have been less than the five years, the maximum penalty which was given him by the jury. This evidence certainly had a tendency to enhance the passion. It was the beginning and cause of the passion, and the circumstances occurring subsequently added to this passion, and while he could not rely upon the occurrences of the previous night as a basis of manslaughter, because the insulting conduct had occurred in his presence and had passed, yet in viewing the transaction at the time of the homicide these circumstances were of the most cogent and terrific force. It will be understood that in offenses where the punishment is graduated as it is in manslaughter from two to five years, there are two serious questions always to be taken into consideration both by the court and the jury. This graduated punishment was placed in our law by the law making power for the purpose of enabling the jury to minimize or magnify the punishment as the attendant circumstances of the homicide might manifest. If the jury had been properly instructed in this respect the punishment might have been two years; it at least might have been under the 'maximum punishment of five years. The two considerations above alluded to always to be considered, in view of our law where graduated punishment is set out, are: First, any fact that would lead to an acquittal becomes of the gravest importance to an accused and the proper and correct enforcement of the law, and the elimination of which fact would be seriously detrimental to the enforcement of the law, as well as the legal rights of a party accused of crime. The omission of a proper charge in regard to an extenuating circumstance should be and is always held to be reversible error. This proposition of law is not to be questioned. The second proposition is that whether it leads to an acquittal or not, if the fact leads to or would have the effect of probably minimizing the punishment below the maximum, then it is of equal importance as if it would lead to an acquittal. A party accused of crime under our law is entitled to all the facts which go in extenuation of the offense, although he may be guilty, and, of course, is necessarily, as a legal proposition, entitled to a charge submitting those facts to the consideration of the jury. In this case the court charged the jury as to

the insults set out in the note, but other facts were there of strong probative force showing the previous insult and the condition in which it left the mind of the accused. It is unnecessary here to repeat those facts. Now, the court should have charged the jury not only with reference to the insult conveyed by the terms of the note, but also to instruct them to consider the previous facts in passing upon the mental status of the party. His mind had already been inflamed to the point where he was entitled to a conviction only of manslaughter had the killing occurred the night previous, but the subsequent day additional insult is added to the previous injury. The mind of appellant was already inflamed by this conduct, as shown by the testimony. Therefore, we say that appellant was not only entitled to a charge submitting all these facts, but it was clearly error not to give such charge, and as said by Judge Lumpkin: "Was it not right and proper, in order to account for his violence, to give in proof to the jury the occurrences of the preceding evening?" The Biggs case has formed a basis of a long line of decisions in this State. Not only so, but the statute itself by giving the graduated punishment, and the circumstances that attend the homicide under such circumstances is in direct consonance with the doctrine laid down by Judge Lumpkin; and whether the Biggs case had ever been written, the law would have been the same. Judge Lumpkin touched this with the same master hand with which he always touched great questions, and our court has followed with an unbroken line of decisions the same principle. Miles v. State, supra; Wadlington v. State, 19 Texas Crim. App., 266; Johnson v. State, 22 Texas Crim. App., 206; Howard v. State, 23 Texas Crim. App., 266; Bonnard v. State, 25 Texas Crim. App., 173; Orman v. State, 24 Texas Crim. App., 496; Hawthorn v. State, 28 Texas Crim. App., 213; Cochran v. State, 28 Texas Crim. App., 422; Bonner v. State, 29 Texas Crim. App., 223; Bracken v. State, 29 Texas Crim. App., 362; Baltrip v. State, 30 Texas Crim. App., 545. See also the cases cited in the original opinion. One of the last cases, as well as one of the best considered cases decided by this court laying down the proposition here asserted, is found reported in 54 Texas Crim. Rep., 477, McHenry v. State. We might enter into a further discussion of this matter amplifying authorities and reasons, but suffice it to say that any fact that would lead to an acquittal of the party or to an extenuation of the punishment if guilty, is a potent fact always admissible, and whenever the fact is admitted the law applicable to the fact should be given in charge to the jury.

The other questions we do not care to discuss.

For the reasons indicated the motion for rehearing is overruled.

*Overruled.*

Prendergast, Judge, not sitting.