### WILL GILES v. THE STATE.

#### No. 835.   Decided November 30, 1910.

**Murder—Charge of Court—Adequate Cause—Threats.**

Where, upon trial of murder, the evidence showed threats by deceased, and that when defendant upbraided the deceased for intimate conduct with defendant's wife, the deceased boasted of it, when defendant shot and killed him. This was manslaughter; and where the court in his charge submitted the issue of adequate cause, and directed the jury that they could take into consideration all the facts and circumstances in evidence, it was not necessary that the subject of threats as one of these circumstances should have been singled out in the charge; the conviction being for manslaughter.

Appeal from the District Court of Cass. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*O'Neal & Allday* and *Hill Stewart*, for appellant.—On the question of the court's charge on manslaughter: Akin v. State, 56 Texas Crim. Rep., 324, 119 S. W. Rep., 863; Snowberger v. State, 58 Texas Crim. Rep., 530, 126 S. W. Rep., 878.

*John A. Mobley*, Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for manslaughter with a penalty of four years confinement in the penitentiary.

There are no bills of exception in the record and but one question is presented. In the motion for a new trial complaint was made that the charge of the court on the subject of manslaughter did not submit to the jury for their determination all the facts and circumstances in the case, which the jury should consider in determining whether there was adequate cause or not.

The facts disclose that in November, 1907, the defendant in this case shot and killed one Emmett Johnson, in Cass County, Texas. This killing occurred about three o'clock in the afternoon at the home of one Jim Demmons, who lived a couple of miles from where

the defendant lived. The parties are all negroes. On the day of the killing the defendant went to the house of Jim Demmons and got Jim Demmons' wife to write a letter for him to his wife, who was in Louisiana, and who had been there two or three months. While writing the letter defendant's two brothers came to the house; one of them had a shotgun and left it sitting out on the gallery and went in the house. Shortly thereafter Emmett Johnson, the deceased, appeared, went into the house and they all had some conversation, the State witnesses contending that some jocular remarks passed between deceased and the defendant. Directly defendant called the deceased out of the house. They walked out of the front door on to the gallery where the gun was and directly the gun fired. Defendant shot the deceased in the head, killing him almost instantly, and as deceased fell defendant fired another shot. The defendant's theory of the case was that when they got out on the gallery that defendant asked deceased if he had been to Louisiana and seen his wife, and deceased replied, "I have, and what are you going to do about it?" Some words passed, when defendant claimed that deceased rushed on him with a pocketknife, and that he grabbed up the gun and shot him. He offered some testimony that there was a pocketknife found open under the body of deceased after the killing. The theory of the State was that he called deceased out there and shot him and that deceased was doing nothing at the time. The testimony further discloses that the defendant suspected that the deceased had been intimate with his wife, and that deceased had gone to Louisiana to see his wife, and on the morning before the killing the defendant was at the deceased's house and met a man there by the name of Young and proposed to sell him his crop, that he wanted to buy a gun, claiming that deceased had carried his wife off and that he intended to kill him. This was in the presence of the wife of deceased, and she, in the presence of Young, told the defendant that he need not be cutting up about his wife, and said, "You know you and Emmett agreed to swap wives and we agreed to it." The defendant also proved that deceased had made threats against the life of defendant and said he intended to have defendant's wife, and if defendant fooled with him he would kill him. The case was submitted to the jury in the court's charge on murder in the first and second degrees, manslaughter and self-defense, and on the subject of manslaughter the court charged the jury as follows:

"Manslaughter is voluntary homicide, committed under the immediate influence of sudden passion, arising from an adequate cause, but neither justified nor excused by law. By the expression, 'under the immediate influence of sudden passion,' is meant: 1. The provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. 2. The act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated

by the passion arising from some other provocation, or a provocation given by some other person than the party killed. 3. The passion intended is either of emotions of the mind known as anger, rage, sudden resentment or terror, rendering it incapable of cool reflection. 4. By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. The following is deemed adequate cause: Adultery of the person killed with the wife of the person guilty of the homicide, provided the killing occur as soon as the fact of an illicit connection is discovered. The law itself makes the above adequate cause. Now, if you believe from the evidence that Emmett Johnson had been guilty of adultery with the wife of defendant, or if you believe from the evidence that the defendant had been informed that Emmett Johnson had been guilty of adultery with his wife, and that he believed it, and that defendant shot and killed Emmett Johnson the first time he met him after he was so informed and believed it, then this would be adequate cause to reduce the killing to manslaughter. It makes no difference whether Emmett Johnson had in fact been guilty of adultery with the wife of defendant, if defendant was so informed and believed it, then it is just the same, as if he was in fact guilty of adultery with the wife of defendant. If defendant had been informed that Emmett Johnson had been guilty of adultery with his wife and believed it was true, then to make this adequate cause you must believe from the evidence that defendant shot and killed deceased the first time he met him after being so informed and after he believed it was true. In such cases the provocation does not arise at the time of the killing, but it arises before the act of killing. I further charge you, as a part of the law of adequate cause, the following: If you believe from the evidence that defendant had been informed that Emmett Johnson had been guilty of adultery with his wife and thereafter he sent her off to DeRidder, Louisiana, and that he was afterwards informed that Emmett Johnson had gone to DeRidder to visit his wife, and that when he met Emmett Johnson thereafter he spoke to him and asked him about it and that Emmett Johnson told him in substance that he had been to DeRidder and had seen his wife, and from all that he said and his manner of talking and from all the evidence in this case you believe that what he said, taken in connection with all the evidence in this case, would have commonly produced a degree of anger, rage, resentment or terror in the mind of a person of ordinary temper sufficient to render it incapable of cool reflection, then this would be adequate cause to reduce the killing to manslaughter.

"In order to reduce a voluntary homicide to the grade of manslaughter it is necessary not only that adequate cause existed to produce the state of mind referred to, that is, of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflec-

tion, but also that such state of mind did actually exist at the time of the commission of the offense.

"It is your duty in determining the adequacy of the last provocation to consider in connection therewith all the facts and circumstances in evidence in the case, and if you find that by reason thereof the defendant's mind at the time of the killing was incapable of cool reflection, and that said fact and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the past provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the last particular cause to produce such condition.

"If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a gun, in a sudden passion aroused by adequate cause, as the same is herein explained, and not in defense of himself as the law of self-defense is defined to you in this charge hereafter, did shoot and thereby kill Emmett Johnson, the deceased, as charged in the indictment, you will find the defendant guilty of manslaughter, and assess his punishment in the State penitentiary for any term of not less than two nor more than five years."

In the motion for new trial complaint is made of this charge in that the court did not direct the jury that in determining adequate cause they would consider the threats made by the deceased, together with the other facts and circumstances, to determine whether he was guilty or not, and complaint is also made that the charge was too restrictive, in that it attempted to limit manslaughter, wherein the court directed the jury that in determining whether adequate cause existed at the time of the killing they would take into consideration all the facts and circumstances connected therewith, meaning the cause of the killing, which was that deceased had informed the defendant he had been to Louisiana to see his wife. That the court should have gone further and instructed the jury that in considering this question they should take into consideration the conduct of the deceased at the time of the killing in connection with his words, together with his previous threats and previous conduct, and we are cited in support of this theory to the case of McHenry v. State, 54 Texas Crim. Rep., 477. In the McHenry case the court in his charge limited the provocation to the time of the commission of the offense, and wherein the court used the expression, "And if you further find that such state of mind was produced by some condition or circumstance in evidence which was capable of arousing in the mind of a person of ordinary temper such degree of anger, rage," etc., that this language of the court limited the circumstances in evidence to the time of the killing, and we held in that case that said charge was erroneous. We do not think that the McHenry case is an authority in point, for in that case this court simply held that

because of the peculiar language of the court below, in ·confining the conditions and circumstances to the provocation arising at the time of the killing, the court should have charged the jury on the question of threats and the circumstances arising before the fatal meeting, whereas in this case the court directed the jury that in determining whether adequate cause existed at the time of the killing they should take into consideration all the facts and circumstances of the case. What were the facts and circumstances here? Defendant upbraided the deceased for going to see his wife in Louisiana. He boasted of it and said he did, and asked defendant what he was going to do about it. A killing under such circumstances would be manslaughter. Now, the court did not limit the provocation to this time, but directed the jury that they could take into consideration all the facts and circumstances in evidence before them in determining whether or not his mind was moved by that degree of anger, rage, sudden resentment or terror, as to render it incapable of cool reflection. But the defendant contends that he should have specially mentioned that they would consider the threats as one of the circumstances that should have been embodied in the charge. We do not think the court was called upon to select out of the great number of circumstances detailed in evidence any particular circumstance and mention that to the exclusion of the other circumstances. When the court directed the jury that in determining the adequacy of the cause they had a right to take into consideration all the facts and circumstances in evidence, this was a sufficient statement of the law as applicable to the facts.

We believe the court's charge is not subject to the criticism of counsel for appellant, and finding no · error in the record the judgment is in all things affirmed.

*Affirmed.*