Frank Willis v. The State.

No. 2571.  Decided April 15, 1914.

Rehearing denied May 20, 1914.

1.—Murder—Transcript—Delay.

See opinion for pointing out inexcusable delay and negligence in preparing transcript and filing same in this court.

2.—Same—Manslaughter—Charge of Court—Antecedent Matters—Provocation—Insult to Female Relative—Rule Stated.

If insult to a female relative is relied on to reduce the offense to manslaughter, the killing must take place at the first meeting after the occurrence, and the court should so instruct the jury, and under no phase of the case could a previous insult be adequate cause where the parties had met and passed such previous insult, and such previous insult can only be considered in passing on defendant's state of mind, etc., at the time of the homicide. In all other cases, the provocation must arise at the time, and the antecedent circumstances can be looked to in passing on the adequacy of the cause and the state of mind of the person on trial.

3.—Same—Case Stated—Letters—Adequate Cause—Charge of Court.

Where, upon appeal from a conviction of murder, it is not shown by the record that defendant knew of any misconduct of deceased after he had seen and passed him except such as might be inferred from the letter he received from his wife, and the court aptly in the special charge given instructs the jury that if this letter led defendant to believe that deceased and his wife had been guilty of improper conduct, he would be guilty of no higher offense than manslaughter, there was no error, the court instructing the jury besides, to consider in connection therewith all the facts and circumstances in evidence in the case, both before and at the time of the killing. Davidson, Judge, dissenting.

4.—Same—Charge of Court—Manslaughter—Self-defense.

Where, upon trial of murder, the court's charge as a whole, together with a special charge given at defendant's request fairly and fully presented the law

of manslaughter, as it applied to the evidence and also submitted the law of self-defense and insanity as made by the evidence, there was no reversible error. Davidson, Judge, dissenting.

### 5.—Same—Evidence—Bill of Exceptions.

Where the bills of exception were not approved and properly filed, they can not be considered in connection with the introduction of testimony. Following Riojas v. State, 36 Texas Crim. Rep., 182.

### 6.—Same—Sufficiency of the Evidence.

Where, appellant in his motion for rehearing contended that the evidence would show no higher grade of offense than manslaughter, if he was not insane and did not act in self-defense, but the evidence in the record showed the contrary, the conviction for murder is sustained.

### 7.—Same—Bills of Exception—Want of Diligence—Mistake.

Where appellant's bills of exception were not filed until one hundred days or more after adjournment of the trial court, the plea of mistake, etc., to overcome want of diligence can not be considered, and a mistake of law can not be pleaded.

### 8.—Same—Charge of Court—Manslaughter—Special Charge.

Where the court's charge considered in connection with the special charge given was a full, fair and apt presentation of the law as applicable to the testimony, there was no error.

Appeal from the District Court of McLennan.   Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Dan Jackson* and *Joe W. Taylor* and *P. M. Neff,* for appellant.—On question of insulting conduct and adequate cause:   Garrett v. State, 36 Texas Crim. Rep., 230; Wright v. State, 52 Texas Crim. Rep., 542, 107 S. W. Rep., 822; Rogers v. State, 67 Texas Crim. Rep., 467, 149 S. W. Rep., 127.

On question of insult to female relative and adequate cause:   Dobbs v. State, 54 Texas Crim. Rep., 550, 113 S. W. Rep., 923; McHenry v. State, 54 Texas Crim. Rep., 477, 114 S. W. Rep., 115; Blocker v. State, 61 Texas Crim. Rep., 413, 135 S. W. Rep., 130; Cole v. State, 45 Texas Crim. Rep., 225; Warthan v. State, 41 id., 385; Lee v. State, 54 Texas Crim. Rep., 382, 113 S. W. Rep., 301; Vining v. State, 66 Texas Crim. Rep., 316, 146 S. W. Rep., 909; Smith v. State, 67 Texas Crim. Rep., 28, 148 S. W. Rep., 699; Edwards v. State, 68 Texas Crim. Rep., 197, 151 S. W. Rep., 294; Snowberger v. State, 58 Texas Crim. Rep., 530.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary.

This case was tried in 1911, and for more than two years the record was not filed in this court, and when filed no statement of facts accom-

panied it, but appellant's counsel filed an affidavit stating that he had secured the approval of and filed a statement of facts within the time provided by law, and asked that this court postpone consideration of the case until the statement of facts could be substituted. Under article 884 of the Code of Criminal Procedure, of course time was granted. Subsequently we are informed that by search the statement of facts was found, and it is now on file in this court, and shows to have been filed in the court below within the time allowed by law. Such negligence is inexcusable, for now it will soon be three years since this case was tried in the court below, and it is such delays as this that has caused discussion of and demanded for change in our procedure, when a change in procedure in this matter is not so much demanded as a compliance with the law as it is written.

The court only submitted murder in the second degree and manslaughter in his charge, and fully presented the law of self-defense and insanity as applicable to the evidence. The main complaint as to this charge is to that part of submitting the issue of manslaughter, it being contended that it is too restrictive, etc. The facts in this case would show that appellant was a married man, and kept a hotel at Eddy. Deceased worked at a gin and boarded at appellant's hotel. Appellant became jealous and suspicious of the attentions deceased was paying to his wife, and testifies to many circumstances, which finally led to a breach, and deceased quit boarding at this hotel and went elsewhere to board. It also caused a breach between appellant and his wife, and after several quarrels or scenes, appellant's wife left and went to visit her father at San Saba, and brother at Lometa. He contends that he did not know that this was a permanent separation, and he visited her at the home of her brother in Lometa, and while there by going to the postoffice he secured a letter addressed to his wife signed "K. C." The letter reads:

"Eddy, Texas.

"Mrs. Tempie Willis, Lometa, Texas.

Dearest one:—Will ans. your sweet letter which I received this morning. listen dear frank left this morning and the letter I got was broken open and had been red before I got it. it was opened while in the postoffice. Girl I would give anything to see you and talk with you for awhile and you dont want to see me any more than I do you. Sweet Heart I can't write much for frank has gone and he may call for your mail so if you get this write and let me no, and I will write more next time. Iff I dont hear from you I will keep writing so dont worry about me I will come out all write. I may get killed but he will haft to do it dont think anything A bout this writing until I see what is going to come up and I will write often iff ever thing is all write So love me and stay with me and we will come out all write. I took up for you and would do it again iff necessary So bee good and true and I will do the same.

"Yours forever,

"K. C."

After getting this letter, he and his wife again had words, and the record would authorize the jury to conclude that appellant was then informed by his wife, if he had not been so informed prior thereto, that the separation was permanent. After leaving Lometa appellant went to Dobbin, and on September 24th wrote deceased the following letter:

"Bud Albright:

"Your plans are known. Don't carry them out. Stop! Think! Don't! Don't! 8 pair of eyes are on you. 'Take warning!' Don't go no further. You know what I mean. It is not J. C. You don't know me. Will be near you when you get this. You are not all to blame. No harm will be done you. Do right Letters have not all reached their destination. That is enough." Envelope: "Albert Albright, Eddy, Texas." Postmarked: "Dobbin, Texas, September 24, 1910."

Appellant returned to Eddy and frequently met deceased after he had secured the "K. C." letter and written the letter herein copied. In fact he was in the barbershop in Eddy with deceased on Saturday night, and in a restaurant with him on Sunday, just prior to the killing Monday morning, October 10th.

There is another letter in the record which appellant says he received from his wife on the morning he killed deceased. It reads: "Yes, Frank I got your letter and I have been writing to Albert and he has been writing to me. What is it to you—we are separated, so you let me alone. You had better let him alone, if you don't he will fix you; he said that he had taken all that he was going to take off of you—now one of you will get killed if you don't let me alone. He is not afraid of you and I don't think you are afraid of him. I don't want neither one of you to get killed, but Frank listen to me; he will kill you,—so you tend to your own business. I have left you and I will write to anyone I please. "Tempie."

Mrs. Willis testifies she wrote appellant this letter on Friday or Saturday before the killing on Monday morning. He says he did not receive it until Monday morning, and had not received it when he was in the barbershop with deceased on Saturday night, nor when he was with him on Sunday. The State's evidence is that while deceased, Albert Albright, was in the tailor shop of O. L. Wicks Monday morning, sitting on a table or counter, and while Wicks was showing J. W. Morrow some samples of cloth, appellant came in the tailor shop, and without a word being passed shot Albright, who fell to the floor, appellant continuing to shoot him or shoot at him; that so far as they noticed appellant said nothing to deceased, nor deceased to him; that Albright made no move or demonstration of any kind. Appellant testifies that he was in the tailor shop when deceased came in, being behind Morrow and Wicks, with his back to the door; that he heard them speak to Albright, and he turned and looked around; that deceased was leaning against the counter, and as he looked around deceased gave him an angry and threatening look and reached for his hip-pocket as if to draw a pistol, and he

thought his life was in danger, when he shot deceased and killed him. While the record is rather voluminous, yet we think this is a sufficient statement of the case to render intelligible the rulings herein made.

On the issue of manslaughter, after defining manslaughter as it is defined in the statute, the court instructed the jury: "The following are deemed adequate causes: Insulting words or conduct, if any, of the person killed towards a female relation of the party guilty of the homicide. When it is sought to reduce an unlawful killing to the grade of manslaughter by reason of such insulting words or conduct, if any, towards a female relation, it must appear that the killing took place immediately upon the happening of the insulting conduct or the uttering of the insulting words or so soon thereafter as the party killing may meet with the party killed after having been informed of such insults. In determining whether or not there was an adequate cause, the jury have the right to consider all the facts and circumstances in evidence, both before and at the time of the killing." He also at the request of appellant gave the following special charge as a part of the law of the case: "You are instructed that if you should find from the evidence that on the morning of the homicide and shortly prior thereto the defendant received a letter written by his wife the reading of which produced in the mind of the defendant the honest belief that the deceased had committed adultery with Tempie Willis, the wife of defendant, and that such knowledge produced such a degree of anger, rage, or resentment as to render the mind of Frank Willis incapable of cool reflection, and that while laboring under such degree of anger, rage or resentment he shot and thereby killed deceased on the first meeting after receiving such letter and that his act was not justifiable by reason of his acting in self-defense or while he was insane, then and in that event he would be guilty of manslaughter and you should say by your verdict affixing the penalty therefor."

We do not think it can be contended that the letter herein copied signed "K. C." could in law be deemed adequate cause under the evidence, for appellant had met deceased a number of times after he had received and read that letter. In fact had written to deceased the letter herein copied. So in law that passes out as presenting "adequate cause" to reduce the offense to manslaughter, but appellant is right in his contention that it could be and should be considered by the jury in passing on his state of mind at the time he shot deceased. If it were not for the fact that he had received the letter from his wife, on the morning of the homicide, the letter signed "K. C." would be a most cogent circumstance to prove a premeditated killing instead of tending to reduce the grade of the offense to manslaughter. In passing on this character of question in the case of Miles v. State, 18 Texas Crim. App., 156; Judge Hurt says:

"While it is true that the provocation must arise at the time of the commission of the offense, and the passion must not be the result of a former provocation, yet in passing upon the sufficiency of the provocation,

and on the effects of the passion upon the mind of the defendant, the past conduct of the deceased toward defendant, his threats and bearing, in fact all the facts and circumstances in the case, should be considered by the jury. An act standing alone may not be sufficient provocation, but may be ample when it is one of a series of similar acts, or when it has been preceded by an insolent and aggravating course of conduct, whether similar or not to the act committed at the time of the homicide.

"We are of the opinion that the charge of the court was too restrictive upon the subject, and that the attention of the jury should have been directed to all the facts of the case; not by the special enumeration of each, but they should have been told that, in passing upon the sufficiency of the provocation, and the effects of the passion upon the mind of the defendant, they must look to all the facts in the case."

It is seen that Judge Hurt says antecedent matters can be looked to in passing on the state of mind of appellant, but the court should not enumerate them, but the jury should be told that they must look to all the facts and circumstances in the case. Judge Davidson, in the case of Reinhardt v. State, 60 Texas Crim. Rep., 662, in overruling the State's motion for a rehearing, aptly and tersely states the rule to be: "Had the jury been instructed with regard to these extraneous matters which necessarily entered into the mind of the appellant, it is possible and fully probable that his punishment, although convicted of manslaughter, might have been less than the five years, the maximum penalty which was given him by the jury. This evidence certainly had a tendency to enhance the passion. It was the beginning and cause of the passion, and the circumstances occurring subsequently added to this passion, *and while he could not rely upon the occurrences of the previous night as a basis of manslaughter,* because the insulting conduct had occurred in his presence and had passed, yet in viewing the transaction at the time of the homicide these circumstances were of the most cogent and terrific force." And it will be found by reference to all of our decisions that if insult to a female relative is relied on to reduce the offense to manslaughter, the killing must take place at the first meeting after the occurrence, and the court should so instruct the jury, and under no phase of the case could a previous insult be adequate cause, where the parties had met and passed, and such previous insult can only be considered in passing on appellant's state of mind, etc., at the time of the homicide. In all other cases the provocation *must arise at the time,* and the antecedent circumstances can be looked to in passing on the adequacy of the cause and the state of mind of the person on trial.

It is not shown by the record that appellant knew of any misconduct of deceased, after he had seen and passed him, except such as might be inferred from the letter received from his wife, and the court aptly in the special charge given instructs the jury, that if this letter led him to believe that deceased and his wife had been guilty of improper conduct, he would be guilty of no higher offense than manslaughter, and it was for the jury and not this court nor the trial court to draw the deductions

from the language used in the letter. It may be that this letter emphasized the fact that deceased was writing to his wife, a fact already known to him, and he met and passed deceased after receiving that information, and it may be that prior to that time he had a lingering hope that a conciliation between himself and his wife might be brought about, and this letter blasted that hope, but with the knowledge of facts already known to him, this would not be statutory adequate cause, but it would be an incident to be considered with other facts and circumstances in the case as to whether adequate cause existed, and the court did so inform the jury in the following language: "It is your duty in determining the adequacy of the provocation (if any) to consider in connection therewith, all the facts and circumstances in evidence in the case, both before and at the time of the killing, and if you find that by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause (if any) producing such condition." Had the letter written by the wife in and of itself been a statutory adequate cause, appellant's complaints might be well founded, but it is only by inference or deduction that the language used would be adequate cause in law, and the court instructed the jury specifically as requested by appellant that if from the language of the letter an impression was made on defendant's mind leading him to believe that his wife and deceased had been guilty of adultery, this would be adequate cause; and it was proper for the court to instruct the jury that in passing on this question they should consider all the facts and circumstances in the case, and if all together were sufficient at the time of the killing to create this impression in his mind and to render defendant's mind incapable of cool reflection, it would reduce the offense to manslaughter. In other words, if the letter written by the wife was clothed in language that would lead an ordinary man to believe that deceased and his wife's conduct was such as to be an insult to an ordinary man, this would be statutory adequate cause; if not, yet it might be considered with other facts and circumstances in evidence in passing on that issue. What is in this letter? It tells him his wife was writing to deceased, and he was writing to her. He had known this fact for a month, and passed and repassed deceased. It recites they had separated, and she wanted appellant to let her alone, that she would write to whom she pleased. If this had been the first information appellant had received that deceased was corresponding with his wife, it might be adequate cause, but this fact was known to him before he received this letter, and he had not called deceased to account for it when he met him. It then goes on and advises appellant to let deceased alone, and it might be said, it threatens, if he did not do so, deceased would

kill him, but this would not be statutory adequate cause, but would be considered a circumstance with the other facts and circumstances in the case. Not only had appellant seen the "K. C." letter, but he testified to many facts and circumstances occurring at the hotel prior to the separation, but all this time he was daily coming in contact with deceased, and it would have been improper for the court to have undertaken to have enumerated these various matters, for none of them in law were statutory adequate cause at the time of the killing. If there was statutory adequate cause, it must arise from the letter written by his wife to him, viewed in the light of all the antecedent circumstances in evidence. It is not a case where the language used in the letter is in and of itself adequate cause in law, but to render it so it took a consideration of the previous acts and conduct. While it is true that when he received the "K. C." letter, had the killing taken place when he first met deceased thereafter, this would in law be adequate cause in and of itself; but he by his acts and conduct condoned this, and then it became like any fact in evidence, a circumstance to be considered with the other facts in evidence, and it would have been error and upon the weight of the testimony for the court to have selected this isolated circumstance and instructed the jury in regard to the weight to be given thereto. The court's charge as a whole, together with the special charge given at appellant's request, fairly and fully presented the law of manslaughter as applicable to the evidence adduced on this trial, and it is not subject to the criticisms of appellant. The court also fairly and fully presented the law of self-defense and insanity as made by the testimony. In fact we think the court's charge as a whole is subject to none of the criticisms contained in appellant's motion for a new trial, and so ably argued and presented in his brief.

The bills of exception in regard to the introduction of evidence can not be considered by us. The rules governing such matter are stated by this court in the case of Riojas v. State, 36 Texas Crim. Rep., 182, and cases there cited. So far as we have been able to ascertain the rules there announced have always been followed by this court. One must use due diligence in securing the approval of his bills of exception, and see that they are properly filed within the time the law permits this to be done.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE (dissenting).—1. In view of all the facts found in this record, I do not believe conviction for an offense higher than manslaughter is justified. That deceased brought about the separation of appellant and his wife is not debatable. There was no other cause for the trouble attempted to be shown. That deceased perhaps went further than alienation and separation of the parties is justified by the facts. The letter received a few moments before the killing placed his mind beyond cool reflection, and *this is the cause* for the killing, viewed

in the light of other conduct by deceased.  Stewart v. State, 52 Texas
Crim. Rep., 273.

2.  The defendant was entitled to a charge.  1st.  Submitting in-
sulting conduct affirmatively and separately from circumstances gener-
ally.  2nd.  Another distinct charge on combination of causes, previous
conduct, etc.  I do not think the charge was sufficient, nor the verdict
justified for murder.

### ON REHEARING.

### May 20, 1914.

HARPER, JUDGE.—Appellant has filed a motion for rehearing, re-
citing at length the testimony of appellant, and that introduced in his
behalf, and says this would show no higher grade of offense than man-
slaughter, if appellant was not insane, and he did not act in self-defense.
Unfortunately for appellant this is not all the evidence in the record,
but this court, as did the jury, must take into consideration all the evi-
dence offered in behalf of the State, and from all the testimony adduced
pass on the issues raised.  Appellant takes his evidence alone, that on
Saturday night before the killing wherein he stated he had heard certain
matters about his wife leaving her brother's residence, and that he
thought she had fled with deceased; about him going to Temple, what
was there said and done, and about the inquiry he made to locate the
deceased on Saturday night and Sunday.  If the jury had believed this,
doubtless their verdict might have been different.  But that such evidence
did not present the true state of facts was evidently found by the jury.
The State offered evidence that appellant was in Eddy Saturday night
and Sunday, and not in Temple, and that he was with deceased in the
barber shop at Eddy Saturday night, and with him in the restaurant in
Eddy on Sunday evening, and appellant shortly after the killing in
talking with George Morris asked Morris if he knew he (Morris) had
prevented him from killing Albright Sunday night in the restau-
rant; that he intended to kill him Sunday night, and he, Morris, walked
between them.  Morris also said that appellant said that he saw Al-
bright in the barber shop Saturday night, and that he intended to kill
him when he got out of the barber chair, and would have done so but
that Ferguson, the barber, was between him and Albright and he was
afraid he would kill the barber.  Morris swears positively he saw appel-
lant and deceased in the restaurant together on Sunday night before
the killing the next morning.  R. C. Elliott testified he heard appellant
make these statements to Mr. Morris.  Will England testified for the
State, that appellant and deceased were in Ferguson's barber shop to-
gether Saturday night before the killing on Monday.  Thus it is shown
if the testimony offered by the State is true, and appellant told the truth
shortly after the killing, he was not in Temple Saturday night, and none
of those things took place that appellant's attorney narrates so tragically
in his argument, based on appellant's testimony on this trial.  In this mo-
tion the contention is also made that deceased and appellant's wife had

been guilty of adultery, yet a few days after the killing appellant testified at the examining trial, and swore, "I do not believe that Bud Albright (deceased) ever had intercourse with my wife." If he did not so believe at the time of the killing, and he so testified under oath, it is not strange that the jury did not give great weight to his testimony on this trial, that he did so believe, and especially so, when he also testified before the grand jury that he did not so believe, and in his testimony before the grand jury appellant admits he saw deceased Sunday night in Eddy, therefore it is not strange that the jury did not place much faith in his testimony on this trial when he said he thought he had run off with his wife Saturday until he met him Monday morning. The other facts which appellant recites in his motion as showing there was no higher grade of offense than manslaughter made by the evidence, are met in the same way by the testimony offered by the State.

Appellant insists that although his bills were not filed for more than one hundred days after court adjourned, yet as there was a mistake of law as to when they should have been filed, we ought to consider them. In the case of George v. State, 25 Texas Crim. App., 229, a much stronger case was made legally, and from an equitable standpoint, yet the court struck them from the record. Appellant used not one-half the diligence the attorneys in that case show they used; in fact in this case, the use of diligence to have the bills filed is not shown, but a mistake as to the law is only plead.

The court's charge, especially when we consider the special charges given at appellant's request, was a full, fair and apt presentation of the law as applicable to the testimony adduced on this trial, and the motion for rehearing is overruled.

*Overruled.*