## F. R. Bolin v. The State.

### No. 5072.    Decided June 19, 1918.

**1.—Assault to Murder—Evidence—Conversation—Other Transactions—Threats.**

Where, upon trial of assault with intent to murder, it could have been shown that the trouble between the defendant and the deceased, who was his son-in-law, grew out of the fact that the latter had married defendant's daughter to avoid prosecution for seduction, and had been trying to leave his wife, and that shortly before the homicide the parties had to some extent discussed these family troubles, the defendant should have been permitted to show, as explanatory of these conversations, the fact that deceased had married defendant's daughter to avoid prosecution for seduction; that he had been trying to leave his wife and had undertaken to produce an abortion on her, etc., and, also, the uncommunicated threats by deceased against defendant.

**2.—Same—Aggravated Assault—Charge of Court—Communicated Threats.**

Where, upon trial of assault with intent to murder, communicated threats were introduced in evidence and the facts called for a charge of aggravated assault, the court should have submitted a charge on aggravated assault, and this, although the defendant relied upon self-defense.

**3.—Same—Suspended Sentence—General Reputation.**

Where, upon trial of assault with intent to murder, defendant filed his plea for suspended sentence and introduced evidence of his general reputation as being a quiet and peaceable man, the State should not have been permitted to show that about sixteen years or more before this trial defendant shot a man in the State of Mississippi, nor that defendant had a fight at a baseball game, some four or five years prior to the instant trial.

Appeal from the District Court of Falls.    Tried below before the Hon. W. A. Patrick.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Nat Llewellyn,* for appellant.—On question of former transactions: McMillan v. State, 65 Texas Crim. Rep., 319, 143 S. W. Rep., 1174; Bradley v. State, 60 Texas Crim. Rep., 398, 132 S. W. Rep., 484.

On question of beginning of difficulty: Bankston v. State, 76 Texas Crim. Rep., 504, 175 S. W. Rep., 1068; Jennings v. State, 60 Texas Crim. Rep., 421, 132 S. W. Rep., 473.

On question of moral turpitude: Ward v. State, 66 Texas Crim. Rep., 313, 146 S. W. Rep., 931.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault with intent to murder and allotted two years in the penitentiary.

This case arose out of trouble between a father-in-law and son-in-law. The son-in-law, J. H. Barham, had been working for appellant in his barbershop, appellant owning the barbershop, and his son-in-law was an employe.    There were four chairs in the shop.    Prosecuting witness

Barham had married appellant's daughter under circumstances that will be mentioned later. He had been thinking of leaving Marlin, where they were living and he was working, and going to Gainesville. This seems to have been talked about in the family, and on Sunday evening before this shooting occurred Monday morning, Barham had spoken to appellant's wife with reference to his leaving and requested her to ask appellant's permission for his, Barham's, wife to remain at appellant's house while he was gone. She told Barham it was useless; that they had talked this matter over with appellant before and he declined to comply with the request. She intimated to him appellant thought, or it was believed, he was trying to leave his wife at the home of her father with a view of deserting her. This brought some further conversation between appellant's wife and Barham and he informed her that he could leave his wife whenever he got ready, and that his attorney had so informed him, and Barham made threats to the effect that he would go if he wanted to, there was nothing to stop him, and if he so determined he would kill the officers, the sheriff and attorneys, etc. Appellant was informed by his wife that night of what had occurred. The next morning he went to his barbershop and while working in the back part of it cleaning away some rubbish Barham came and a conversation occurred with reference to his going away, and appellant objected to his going without taking his wife, and informed him that he had been trying to get rid of his wife and put her on him ever since they had married, or words to that effect. Barham did not agree with appellant's statement of this altogether, but the conversation was a little warm, and appellant told him that he must take his wife with him if he went, and upon Barham informing him of his want of means to do so appellant offered him the money to take her, and stated that he could not leave her at his house under the circumstances; that he had been trying to get away from her ever since he had married her. The conversation here ended and the parties went into the barbershop, and Barham's testimony is to the effect that he heard defendant mumbling something which he could not understand, and that he told appellant "if he did not hush he would kick his damned ——," some of the witnesses said further, "out of the shop"; that Barham stepped to his drawer in front of his barber chair, which was partially open, and put his hand either partly or wholly in the drawer. When this occurred appellant opened his drawer and jerked his pistol and the parties advanced upon each other. Appellant shot Barham. There is some conflict as to what occurred from the time the two men approached their drawers until the shooting ceased.

Under this condition of the record appellant offered to prove that Barham had married his daughter to avoid a prosecution for seduction; that he had been arrested charged with that offense, and married to avoid further prosecution, and his idea seems to have been that since that time Barham had been trying to leave his wife, and that the matters discussed between them was with reference to these family troubles.

He also proposed to prove that after his marriage Barham had undertaken to produce an abortion on his wife. He also proposed to prove by Mrs Barham that on the morning preceding the difficulty when Barham left home to go to the barbershop, that his wife begged him not to have any trouble with appellant. It is unnecessary to detail the conversation. Barham did not agree with her and said he was going to talk with appellant, and if her father did not look out he was going to give him a cursing. This latter threat was not communicated to defendant prior to the difficulty. The other threats seem to have been communicated. We are of opinion that the offered testimony with reference to these conversations between appellant and Barham, having reference to former troubles about the girl and the seduction and the abortion, etc., should have been admitted as explanatory of the conversation which occurred between them at the time or just preceding the difficulty. What occurred between them at the time of the conversation about the wife and the desertion of her and kindred matters having been introduced before the jury as part of the trouble at the barbershop, the other matters should have gone to the jury as explanatory of the conduct of appellant and the relations between the parties and the ill-will. It was also admissible as bearing upon the question as to who began the difficulty. It is always admissible to prove uncommunicated threats when the question as to who began the difficulty is an issue. Barham having testified to the facts the record shows he did, the testimony of Mrs. Barham would have shed light upon the condition of Barham's mind and his relation to his father-in-law and his purpose to leave as incidental to the question as to who began the difficulty. It, therefore, is admissible testimony.

There are several bills of exception bringing up these matters, but it is unnecessary to discuss them in detail. We think the evidence of these previous matters, and especially the threats, were admissible to throw light upon the question as to who began the difficulty, and what it would mean viewed from appellant's standpoint. The communicated threats were introduced, but a charge was not given in that connection. Exception was reserved to the charge for several reasons, among others, that the facts called for a charge on aggravated assault. Such a charge was not given, and we think required. It seems that the court did not so charge the jury for the reason that appellant relied upon self-defense. The testimony of the defendant is not always the criterion of his rights, legally speaking. The facts of the case, whether from the State or the defendant's side, raise the issues upon which the jury should be instructed. It is immaterial from what source comes the testimony. If it is in the record and favorable to defendant, the law should be appropriately given.

Appellant filed a plea asking for a suspension of sentence. He also put in evidence his general reputation as being a quiet and peaceable man. Over objection the State was permitted to show that about sixteen years or more before this trouble appellant had a difficulty in the

State of Mississippi, shooting a man in that State. Appellant objected to this testimony as being too remote. We think this should have been sustained. It should have been sustained viewed either from the standpoint of impeaching his reputation for veracity, or as contravening his right to have the suspended sentence. The State also introduced evidence to the effect that while appellant lived in Comanche County, four or five years prior to this trouble, that he had a fight at a baseball game with another party, and he and the other party pleaded guilty and paid a small fine in the Justice Court. The writer is of the opinion that this testimony ought not to have gone to the jury. It seems to have been a little casual matter that came up incidentally on the playgrounds, resulting in a fist fight, and both parties pleaded guilty to it. This could not be used to impeach his veracity, and we are of opinion that it is not such a violation of the law as could be used in contravention of his plea for suspended sentence.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*