### · Sam Ward v. The State.

#### No. 6997.  Decided January 9, 1924.

**1.—Murder—Manslaughter—Evidence—Mitigation of Punishment.**

Where, upon trial of murder and a conviction of said offense, the defendant offered testimony, which was refused by the Court, as to an occurrence some years previous to the homicide that deceased had ruined his daughter, etc., by debauching her, etc., to show both adequate cause, and also mitigation of punishment, the same is reversible error.—Following Steen v. State, 88 Texas Crim. Rep., 257, and other cases.

**2.—Same—Manslaughter—Rule Stated—Insult to Female Relation.**

Where the fact of the killing is established the first issue the jury is called upon to determine is whether the killing is unlawful. If they so find, then they are next called upon to determine whether it was upon malice, or whether it was done while the person killing was dominated by uncontrollable passion brought about by an adequate cause. which characterizes manslaughter.

**3.—Same—Theory of Defense—Rule Stated.**

To limit the jury in determining this issue solely to those facts and circumstances which immediately surrounded the killing is to deprive them of evidence on which to determine the principal issue which they are required to decide, and which explains the acts and conduct of the parties at the immediate time of the killing.

**4.—Same—Case Stated—Manslaughter—Provocation.**

Standing alone the assault was perhaps not of that character which would reduce the killing to manslaughter; but the jury were entitled to have those facts and circumstances offered in evidence by defendant before them so that they might see whether the alleged assault in connection with all of the other matter offered to be proved, would constitute such provocation as would be adequate cause.

**5.—Same—Evidence—Malice—Manslaughter.**

The objection urged by the State to the reception of the proper testimony that it was too remote seems untenable. The State had proven against appellant as evidencing malice the attempt on his part to kill deceased in December 1917, and when appellant sought to explain to the jury the reason of his conduct, the State objected and the Court sustaining said objection is reversible error.

Appeal from the District Court of Hill.  Tried below before the Honorable Horton B. Porter.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Collins, Dupree & Crenshaw, for appellant.* On question of excluding evidence of insulting conduct of the deceased towards daughter of defendant, Miles v. State, 18 Texas Crim. App., 156; Bolin v. State, 204 S. W. Rep., 335; Willis v. State, 166 id., 1172; Reinhardt v. State, 133 id., 265; Loyd v. State, 81 id., 253; Adams v. State, 60 id., 47.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for murder of Sam Tonnahill with punishment of five years in the penitentiary.

The killing occurred in April, 1921 at a school entertainment. The State's evidence indicated that appellant shot deceased at a time when the latter was unaware of appellant's presence; that the shots all entered the rear portion of the body, some being fired after deceased had fallen. In developing its case in chief the State did not undertake to show motive for the killing but rested its case upon proof of the immediate facts in connection with the homicide, and showed that deceased was unarmed at the time. Appellant testified that prior to the killing he had been informed that deceased had been seen with a pistol, and had said he was going to be ready for appellant and shoot it out with him; that at the time of the killing deceased came suddenly upon appellant struck at him with his fist, striking appellant's hat, and carrying his hand on down to his side as though to secure a weapon, "I am not going to run this time," all of which appellant said frightened him very much, and that he drew his pistol and commenced shooting; that he shot because he believed his life to be in danger. He further testified, "When I shot Tonnahill it ran through my mind that he had ruined my girl and tore up my home and threatened to kill me, and was there trying to do it, and had gone unpunished after the death of my girl for seduction and abortion." The proof showed that the daughter had died in 1919 from influenza. One witness who was present at the homicide supported appellant's testimony that deceased struck at him before appellant fired. On cross-examination of appellant the State elicited from him the fact that in December, 1917 he had attempted to kill deceased, firing at him several times with a pistol; that deceased ran at the time and made no resistance. The State also proved that between December 1917, and the time of the homicide appellant and deceased frequently met each other on the road and in the town where they traded.

The case went to the jury on the evidence substantially as condensed above. The court charged upon murder and self-defense, but declined to submit the issue of manslaughter. It is contended that the evidence even as it stood raised the issue of manslaughter and the main complaint is because of the failure to submit it and the refusal to admit proffered evidence pertinent to that issue. It may be observed that from fragmentary statements before them the jury could have inferred that trouble had arisen between deceased and appellant relative to the former's conduct towards appellant's daughter, and that deceased referred to the former attempt of appellant to kill him in the language attributed to him by appellant at the time of the homicide, when deceased said, "I am not going to run this time," but no evidence was admitted from which the jury could know what had actually occurred, or what had brought about the former attempt of appellant to kill Tonnahill.

With the record in this condition appellant offered to prove that during the year 1917 deceased called upon Lena Ward (appellant's daughter) a few times and that they went together occasionally during the winter of 1916 and during the year 1917; that the visits of deceased to Miss Ward ceased after July, 1917; that appellant learned from his daughter that deceased had ruined her and had furnished her medicine to bring about an abortion which resulted in a miscarriage; that from information from her he found the medicine which had been furnishd by deceased and later on turned it over to the county attorney; that after this information came to appellant the first time he saw deceased was in Whitney about the last of 1917 at which time appellant tried to kill deceased; appellant further offered to prove that after the shooting in Whitney two cases were filed against deceased in the District Court of Hill County charging him with seduction of appellant's daughter and with an abortion upon her; that appellant attended court during the trial of these cases but did not hear the testimony; that after the death of appellant's daughter in 1919 the cases against deceased were dismissed; that after appellant learned of deceased's conduct towards his daughter relative to her seduction and the abortion his mind was very much disturbed and he was greatly worried from the time he learned of the same up to the time of the homicide; and that he had frequently been unable to sleep at nights on account of it; that when he was unable to sleep it was because there was in his mind the knowledge that deceased had ruined his daughter and torn up his home; that he believed deceased had seduced his daughter and furnished her medicine to produce an abortion; that he had never had any difference with deceased about any other matter.

All of the foregoing testimony was offered for the purpose, (a) of showing appellant's state of mind at the time the homicide occurred; (b) as explaining the remark of the deceased at the time the killing

occurred; and (c) upon the further issue as to whether or not the assault testified to by appellant as having been made by deceased at the time of the killing when considered in the light of the previous relations of the parties was sufficient to produce in the mind of a man of ordinary temper, and did produce in the mind of appellant, such anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection thereby raising the issue of manslaughter. Upon objection by the State that the testimony was irrelevant, immaterial, too remote and not admissible for the purpose of reducing the homicide to manslaughter, the court excluded all of said testimony from the jury. In qualifying the bill of exception complaining of the exclusion of this testimony the learned trial judge says:

"The evidence excluded related to matters and things occurring between defendant and deceased several years before the homicide and on account of which defendant made an unsuccessful effort to kill deceased in Whitney in December, 1917. Since the latter date deceased and defendant had frequently met and passed each other at close range. As the court reviews the evidence it was not because of this former trouble that defendant shot and killed deceased, but he predicated his right to kill him at the time of the homicide solely on self-defense, arising out of an alleged attack then made by deceased, and but for which the killing would not have occurred."

The court then sets out in his qualification excerpts from the testimony of appellant which indicated that he did base his act of shooting deceased at the time of the homicide upon his belief that deceased was at the time preparing to kill him (appellant.) It is true appellant explained the killing upon the ground that he believed deceased was armed and that he was about to draw a weapon with which to make an attack upon appellant, but the fact that an accused bases his principal defense upon a certain theory supported by his testimony does not justify the court in excluding evidence which would raise another defensive issue, nor in declining to submit such other issue for the jury's determination. This matter has been discussed by the court in many cases, notably Steen v. State, 88 Texas Crim. Rep., 257, 225 S. W. Rep., 529; which collates many authorities; see also the more recent case of Thompson v. State, (No. 7224, opinion November 28th, 1923).

It appears that appellant tendered the exclued evidence also upon the question of mitigation of punishment. The conviction being for murder, but the lowest punishment having been assessed, that phase of the matter passes out of the case and leaves us to determine whether it should have been admitted upon the issue of manslaughter. It is true that if all the things occurred which appellant offered to prove they would not have reduced the killing to manslaughter unless deceased did some act at the time which either alone or in connection with the former relations of the parties as shown by the excluded

testimony furnished an "adequate cause" and brought about a condition of mind in appellant which would have reduced the homicide to manslaughter. As throwing light upon this issue we refer to the case of Miles v. State, 18 Texas Crim. App., 156; Bolin v. State, 83 Texas Crim. Rep., 590; 204 S. W. Rep., 335; Adams v. State, 42 Texas Crim. Rep., 366, 60 S. W. Rep., 47; Richardson v. State, 12 S. W. Rep., 870; Braken v. State, 16 S. W. Rep., 192; Reinhardt v. State, 60 Texas Crim. Rep., 662, 133 S. W. Rep., 265; Willis v. State, 74 Texas Crim. Rep., 16, 166 S. W. Rep., 1172. For a general discussion of the issue of manslaughter in relation to murder and self-defense we refer to the more recent cases of Steen v. State, (supra); Pickens v. State, 86 Texas Crim. Rep., 657, 218 S. W. Rep., 755; Lewis v. State, 89 Texas Crim. Rep., 345, 231 S. W. Rep., 113.

Where the fact of a killing is established the first issue the jury is called upon to determine is whether the killing is unlawful. If they so find, then they are next called upon to determine whether it was upon malice or whether it was done while the person killing was dominated by uncontrollable passion brought about by an "adequate cause' which characterizes manslaughter. In determining these matters necessarily the jury must be controlled by what was in the mind of the accused at the time of the killing; in ascertaining that they may look to the facts and circumstances immediately surrounding the homicide, and to those past relations of the parties which probably bore upon the mind of accused at the time of the killing and which may have had part in engendering in his mind and heart either malice, which is the chief characteristic of murder, or which in connection with the events happening at the immediate time of the homicide, may have produced that over-mastering rage or terror which deprived his mind of the capacity for cool reflection. To limit the jury in determining this issue solely to those facts and circumstances which immediately surrounded the killing is to deprive them of evidence on which to determine the principal issue which they are required to decide, and which explains the acts and conduct of the parties at the immediate time of the killing. We know from the finding of the jury in the instant case that they concluded appellant was not justified in killing deceased. The only question then left for their determination was whether the killing was upon malice or whether it was under circumstances which would reduce the offense to manslaughter. The defensive evidence is to the effect that deceased assaulted appellant immediately before the killing; but that assault was probably not of such character as impressed the jury that appellant believed himself in danger of losing his life or suffering serious bodily injury, or standing alone, may not have called for the court to submit the issue of manslaughter. How then were the jury to determine whether at the time of the killing appellant's mind was controlled by the evil

design which evidences murder, or the passion which characterizes manslaughter? Necessarily, they must resort to those circumstances in the past relation of the parties which throw light upon the immediate facts surrounding the killing, and give significance to apparently slight assaults or insults. By the exclusion of the evidence offered they were deprived of knowledge of these circumstances. In Adams v. State, (supra) Judge Davidson, speaking for the court, says:

"While it is true the provocation must arise at the time of the killing, and the passion must not be the result of a former provocation, yet the jury may, in deciding the sufficiency of the provocation and consequent passion, look to past occurrences between the parties,—especially those of the deceased towards defendant. One act standing by itself may not be sufficient provocation, but may be ample when viewed in the light of a series of acts, or when it has been preceded by an insulting and aggravating course of conduct, even when of a different character to that committed at the time of the homicide."

In the case before us we have an instance where appellant believed that deceased had debauched his daughter and then produced an abortion upon her, and upon the first meeting after learning of these facts appellant in sudden passion undertakes to kill deceased. The matter then gets into the courts and because of the death of the daughter the dismissal of the cases results. During this time appellant makes no further attempt to harm deceased, but word comes to him that deceased has been seen armed with a pistol and has said that "the next time he will be ready for appellant and will shoot it out with him." While attending the school exercises (according to appellant's testimony) deceased comes up suddenly and without provocation makes an unjustifiable assault upon him, at the same time referring to the previous difficulty and affirms that information which had previously reached appellant, viz: that deceased had said "he would be ready the next time and would not run from him." Standing alone the assault was perhaps not of that character which would reduce the killing to manslaughter; but the jury were entitled to have those facts and circumstances offered in evidence by appellant before them so that they might see whether the alleged assault, in connection with all of the other matters offered to be proved, would constitute such a provocation as would be "adequate cause." It needs no argument to establish that the conduct of one man towards another between whom there had been no previous enmity or ill will, would be passed over lightly or perhaps entirely disregarded, whereas the same conduct from one who had wronged another and where enmity and ill will existed might be considered by the party aggrieved as the grossest kind of insult, calculated in view of their past relations to arouse in his mind that condition which would entirely deprive him of self-

control and attribute to his act not malice, but an uncontrollable impulse brought about by "adequate cause." The objection urged by the State to the reception of the proffered testimony that it was too remote seems untenable. The State had proven against appellant as evidencing malice the attempt on his part to kill deceased in December, 1917. When appellant sought to explain to the jury the reason of his conduct the State objected. He had a right to explain it, and this he could not do without advising the jury of the information upon which he acted at the time. He further would have testified that no trouble of any character had ever arisen between him and deceased save that resulting from a belief that deceased had seduced his daughter and brought about an abortion upon her, and that from the time of learning this up to the very time of the killing it had continually worried appellant; that he was frequently unable to sleep at nights on account of it, and that at the very time of the homicide these matters were in his mind. The matters sought to be shown were connected and interwoven with the killing, and explanatory of the acts and feelings of the principals thereto. The salient facts should have gone to the jury in order that they might determine whether appellant was actuated by malice, which might be characterized as revenge on account of the previous conduct of deceased, or whether in connection with what appellant claims to have occurred at the time of the killing they brought about a condition of mind which would have characterized his act as manslaughter. If the jury should disbelieve the defensive testimony as to what occurred at the time of the killing, they could not seize upon the previous facts and circumstances offered to be proved as predicating thereon a manslaughter verdict.

For the errors discussed the judgment must be reversed and the cause remanded.

*Reversed and remanded.*