# JUNE, 1924.

### Willie Lee Shine v. The State.

No. 8370.   Delivered June 11, 1924.

Rehearing granted March 4, 1925.

1.—Manslaughter—Self-Defense—In Defense of Another.

While it is settled that one may act in the defense of another who is in danger of death or serious bodily injury, and is entitled to the protection of our laws of self-defense, unless the issue is raised by the evidence it is not proper for the court to submit the issue in his charge. In the instant case we do not think the issue was raised by the evidence and the court properly refused the requested charge of appellant embracing such issue.

2.—Same—Provoking the Difficulty—Issue Not Raised.

The firing at deceased by Douglass the companion of appellant, did not constitute a *provoking* of the difficulty, but was the *beginning* of the difficulty, and if appellant thereafter participated in the difficulty, he would have no more right of self-defense than Douglass, his companion had, and the law of provoking a difficulty has no application to such a state of facts.

3.—Same—Special Charge—On Weight of Evidence—Properly Refused.

When appellant requested a special charge which was upon the weight of the testimony, and sought to have the jury told the purpose for which they could consider the flight of Douglass, the companion of appellant who began the firing, such charge was manifestly erroneous, and was properly refused.

4.—Same—Argument of Counsel—Objection to—Not Properly Presented.

Where a bill of exception complains of the argument of the State's attorney to the effect that if appellant was acquitted, he would kill a white man, without setting out the surroundings, and causes which led to the statement, but it is made to appear that upon objection the court promptly withdrew the argument, and instructed the jury not to consider it, no error is presented.

5.—Same—Assault to Murder—Issue Presented.

Where the theory of the defense which is supported by the testimony, is that Douglass a companion of appellant first fired at deceased, and that upon the deceased returning the fire a shot struck appellant, in his coat sleeve, and that thereupon, under stress of excitement and in his own defense, appellant fired one shot, that was not shown to have struck deceased, and the court not having submitted the law of principals, involving an acting together by appellant, and Douglass, a charge on assault to murder, and aggravated assault should have been given.

6.—Same—Self Defense—In Defense of Another—Issue Raised.

Appellant's theory of self defense, in the defense of Douglass from the attack of deceased made on Douglass, and his participation in the shooting, in defense of Douglass as well as in his own defense, upon a more careful analysis of the testimony, on rehearing, leads us to believe that such issue was in the case, and that it was error for the court to refuse a special charge requested by appellant presenting this issue, and the rehearing is granted, the judgment of affirmance is set aside and the judgment reversed and the cause remanded.

Appeal from the District Court of Newton County. Tried below before the Hon. V. H. Stark, Judge.

Appeal from a conviction for manslaughter; penalty, four years in the penitentiary.

The opinion states the case.

*Howth, Adams O'Fiel & Hart,* of Beaumont, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Newton county of manslaughter, and his punishment fixed at four years in the penitentiary.

Deceased and one Shankle were at the house of Smith Johnson at night. As they were leaving deceased pulled a pistol at the gate and fired it five times in the air. The parties then walked on down to the road. Here they were overtaken by appellant and Son Douglass. According to the testimony of Shankle, appellant and Douglass both pulled pistols and asked Shankle and deceased what they knew about some fellows who had done some shooting up in front of the house. Shankle said that appellant pulled his pistol on him and that he threw up his hands and that deceased did not put his hands up but put his hand to his pistol and began to move down the hill. Witness said that Douglass was holding his pistol on Gatlin and at this time said, "Stop, stop, if you don't I'll shoot", but deceased did not stop. Douglass then fired at deceased and appellant also began shooting at him. Witness Shankle said after appellant began shooting he, witness, whirled and ran. This witness

said that appellant fired several times and that he was shooting in the direction of deceased. One Fowler testified that on the night of the shooting he saw two men walk up to Shankle and deceased and heard them accuse said parties of doing the shooting at Smith Johnson's and heard one of the two say, "Let's hold them up and see" and that deceased walked off and Shankle threw his hands up, and that one of the men who had walked up to deceased and Shankle, shot deceased. This witness said deceased got his pistol but he did not know whether he shot any. He also testified that the other man fired, too. He said that when the shooting began he ran away. From the testimony of this witness and his description of the men by their size and appearance it would be concluded that the man who fired the first shot was Douglass. Witnesses who saw appellant shortly after the shooting testified that he had a bullet hole in his coat sleeve. Son Douglass seems to have been shot in the arm by some one. Appellant took the stand in his own behalf and testified that he and Son Douglass walked together down to where the shooting took place. They had heard some shooting shortly before that. Appellant and Douglass each had pistols of similar size and make. Appellant said that when they got down to where Shankle and deceased were that Douglass asked them if they were the ones who did the shooting up on the hill. That all the parties stopped and deceased and Shankle turned facing them. Appellant said that Douglass asked the other parties if they were the ones who did the shooting. Deceased said, "It is none of your damn business," and pulled his pistol and that deceased and Douglas started to shooting about the same time. Appellant said that when he got shot in the sleeve he pulled his pistol and fired one shot, but that he did not know which way he was shooting, that he was scared and excited at the time and after he fired he ran away. Questioned as to whether the shot that he fired killed deceased, appellant said he did not know whether he killed him or not, that he was afraid, and that after he got his in the sleeve he was trying to protect himself.

Appellant requested a number of special charges all of which have been carefully examined and in the refusal of none of which do we find reversible error. The court instructed the jury upon manslaughter and self-defense based on both real and apparent danger. The first special charge sought to have the jury instructed that they could not convict the defendant of more than manslaughter. In view of the fact that he was only convicted of manslaughter, this could present no error. Special charge No. 2 sought to have the jury told that if appellant's shot struck and killed deceased; but that at the time he was laboring under such a degree of terror and excitement as to render his mind incapable of cool reflection, that he could be guilty of no higher grade of offense than aggravated assault. This would plainly not be the law. Special charge No. 3 presented the

law of self-defense upon apparent danger and seems to have been fully covered by the charge of the court. Special charge No. 4 sought to have the jury instructed as to the law of self-defense in defense of another. We have carefully examined the statement of facts and find nothing therein either in the testimony of the appellant or in any of the circumstances surrounding it which would call for a charge upon this theory. If the State's testimony be true, appellant and Douglass with their pistols, accosted deceased and his companion and Douglass fired the first shot. The subsequent acts of appellant during the continuation of the same difficulty could not be predicated upon any theory of the defense of Douglass. Appellant was his own only eye-witness and if his testimony be true it no where suggests that he fired the one shot which he claims to have fired, in defense of Douglass. Special charge No. 5 seems to be based upon the proposition that if appellant's companion Douglass fired the first shot and provoked the difficulty, defendant would have the same right to defend himself against such attack as he would have had had the shooting been first begun by deceased. We do not see how such conduct could be deemed provoking the difficulty. It seems clear to us that it would be the beginning of the difficulty, and if appellant thereafter participated in the difficulty with Douglass he would have no more right of self-defense than Douglass would have. Appellant's special charge No. 6 was upon the weight of the testimony and sought to have the jury told the purposes for which they could consider the testimony of the flight of Douglass. Such charge would have been manifestly erroneous. Special charge No. 7 sought to have the jury told that they could not consider the question of murder. This was not applicable but in view of the verdict of the jury presents nothing for our discussion. To the same effect is special charge No. 8. Special charge No. 9 asking a peremptory instruction of not guilty upon the theory that Douglass fired the first shot and killed deceased, is not supported by the testimony and the giving of same would have been erroneous. Under the State's testimony appellant and Douglass were both armed and acting together with pistols of the same make and size. The bullets that were found in the body of deceased might have been fired from the pistol of either appellant or Douglass.

An exception to the court's charge because of its refusal to submit the law of assault to murder seems to find no support in the testimony. As above outlined, the State's case clearly supports the theory of an acting together on the part of appellant and Douglass, and the case made by the defense shows a shooting by appellant. Such shooting would either be felonious homicide in pursuance of an acting together with Douglass or in self-defense.

Appellant has a bill of exceptions complaining of the argument of State's attorney to the effect that if appellant was acquitted he

would kill a white man. The setting and surroundings and causes which led up to this statement are not shown in the bill, but it is made to appear that upon objection the court promptly withdrew the argument and instructed the jury not to consider it. We do not think it of that harmful character that would necessarily call for a reversal of the case.

The bill of exceptions complaining of the refusal of the motion for new trial presents nothing calling or discussion at our hands.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

MORROW, Presiding Judge.—I concur in the disposition of the case on the ground that the record shows no exception to the failure to instruct on defense of another, and no special charge appropriat to submit such issue if raised.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.—This case has given us trouble both upon original submission and upon motion for rehearing. We restate the testimony as a basis for our further observations. The parties interested were all negroes. A musical entertainment was in progress at Smith Johnson's home. Gatlin, Otis Shankle, Son Douglass and appellant were all there. Gatlin and Shankle left together. Shankle details what occurred as follows: That as they reached the gate Gatlin fired five shots from his pistol and reloaded it after which the two of them walked on in the direction of the church; that they were overtaken by appellant and Douglass; that appellant made some inquiry as to who had fired the shots; that witness said nothing; Gatlin said he did not know, but they had seen some other fellows turn up the road; that appellant and Douglass both pulled their pistols and appellant said, "We will search you first and see if you are the fellows;" that appellant held his pistol on witness and Douglass covered Gatlin; that witness put up his hands; that Gatlin did not but put his hand on his pistol and began slowly to move down the hill; that Douglass told him not to draw his pistol and to stop, that if he did not he would shoot; that Douglass then commenced shooting at Gatlin and Gatlin returned the fire; that appellant also was firing at Gatlin; that a number of shots were fired but witness could not tell how many were fired by any of the parties; that Gatlin was retreating down the hill, Douglass following and both shooting; that they were about seven feet apart; that appellant shot more than once; that Douglass and Gatlin had both fired several shots before appellant fired at all. The evidence shows that appellant was a large negro and Douglass a much smaller man. The witness Fowler did not know the parties but testified that

he saw two persons, both of whom had pistols, one being a tall man and the other a smaller one when they accosted Shankle and Gatlin; that the smaller man asked Shankle and Gatlin if they were the ones who had done the shooting to which one of them replied, "No;" that the smaller man said "Let's hold them up and see;" that Gatlin walked away and the man with him threw his hands up; that the smaller man then shot at Gatlin; that he saw Gatlin get his pistol but did not know whether he shot; that the big man shot also; that after several shots were fired the large man ran away and some shots were fired after he left; that Gatlin did not draw his gun until the small man shot at him.

Appellant proved by many of the State's witnesses his good reputation as a law-abiding citizen. He testified that he and Douglass were going to the Christmas tree at the church; that they heard the shooting near Johnson's place and when they overtook Gatlin and Shankle, Douglass asked if they were the ones who had done the shooting and that Gatlin replied, "What in the hell is it to you?" and immediately jerked out his pistol; that Douglass also drew his pistol; that he did not know which one got their pistol out first, but that they commenced firing about the same time; that after several shots had been exchanged between Gatlin and Douglass a shot struck appellant in the coat sleeve whereupon he drew his pistol and fired one shot and then ran off and hid in the brush; that he was frightened and excited and was trying to defend himself when he fired and did not know whether or not he fired towards Gatlin. Appellant denies there had been any demand for Gatlin and Shankle to throw up their hands or that anything had been said about searching them. According to appellant, neither he nor Douglass had their pistols out at the time the inquiry was made as to who had done the shooting near Johnson's place.. The evidence showed that appellant had a shot through his coat sleeve, and Douglass was shot through the arm.

The case was submitted to the jury independent of Son Douglass' connection with the transaction, no mention being made of appellant's rights or otherwise, depending on whether he acted with Douglass. The issue of principals was in no way submitted. The charge required the jury to believe that appellant fired the shot that killed Gatlin before a conviction could be had. Douglass and appellant had pistols identical in make and caliber and the wounds found on Gatlin's body threw no light on who fired the shots that struck him. The evidence leads more strongly to the belief that Douglass actually fired the fatal shot. Gatlin was backing down the hill firing as he went; Douglass was advancing and firing at Gatlin; they were only about seven feet apart. Douglass believed he had killed Gatlin. He said he was sure one shot from his pistol had struck Gatlin about the shoulders and that he was too close to

miss. While on his way to the doctor to have his arm dressed Douglass learned for the first time that Gatlin was dead. Douglass immediately ran away and was still a fugitive from justice when this case was tried. Appellant's version of the matter makes it even more questionable whether the shot from his pistol inflicted the wound.

Written exceptions were duly filed to the charge because it omitted any instruction on the issue of assault with intent to murder and aggravated assault. A special charge upon the latter issue was requested, as follows:

"If you believe that the defendant shot at the deceased, but missed him, and that at the time he shot at him he was laboring under such degree of terror or excitement as to render his mind incapable of cool reflection, aroused by the exchange of shots of others in his presence, and that such facts were sufficient to produce such excitement or terror in the mind of an ordinary person, viewed in the light of all the facts and circumstances, then you will find the defendant guilty of no higher grade of offense than aggravated assault, and if, upon this point, you have a reasonable doubt, you will acquit the defendant, and say by your verdict, 'Not Guilty' ''.

The latter portion of this charge renders it inappropriate, but the specific exceptions to the charge for the omissions mentioned were sufficient to call the court's attention thereto, and the requested charge emphasized the matter. Bearing in mind that the case went to the jury without any charge on principals whatever, but apparently upon the theory that appellant was an actor independent of Douglass, we have concluded upon more mature consideration that under the evidence and the manner in which the case was submitted that the issues of assault to murder and aggravated assault should also have gone to the jury. Leaving Douglass out of the case, thus eliminating the questions as to whether he killed Gatlin and whether appellant was acting with him, then it would be the law that if appellant fired at Gatlin, but did not hit him, he would be guilty of assault with intent to murder or of aggravated assault, depending on his intent and the state of his mind at the time, provided he was not acting in self-defense.

The following special charge was requested and refused.

"I instruct you that if you shall believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed the deceased, yet if you shall further believe that at the time he did so he believed or it appeared to him that his companion, Son Douglass, was in danger of death or serious bodily injury on account of an attack then being made or about to be made by the deceased or his companion, if any, that you will acquit him; or if upon this point you have a reasonable doubt you will acquit him."

Appellant testified that at the time he fired he was acting in his

own self-defense and this issue was submitted, but if from all the evidence the issue as to the defense of Son Douglass was raised it should also have been submitted. (See Steen v. State, 88 Texas Crim. Rep. 257, 225 S. W. 529; and authorities cited in that opinion; also Ward v. State, 96 Texas Crim. Rep. 278, —S. W.—; Thompson v. State, 96 Texas Crim. Rep. 87, —S. W.—) In our analysis of the facts we have been unable to disassociate the acts of appellant from those of Douglass. This same trouble must have confronted the jury. If Douglass killed Gatlin not in self-defense, and appellant acted with him as a principal, he would be guilty of some grade of homicide regardless of whether his shot struck Gatlin. But what was appellant's rights if Douglass was acting in self-defense. In determining whether the special charge last above quoted should have been given it is necessary to look at the case from the defensive evidence. Appellant says that neither he nor Douglass had their pistols drawn when Douglass made an inquiry about who had done the shooting near Johnson's house, to which inquiry Gatlin replied, ''What in the hell is it to you?'' and immediately commenced to draw his pistol. If this be true, Douglass and appellant being together, either had a right to meet the offensive act of Gatlin by drawing his own gun in self-defense. If Gatlin and Douglass commenced to fire at each other, Douglass acting on the defensive, appellant would have the same right to defend Douglass as Douglass himself would have. Upon a more careful analysis of the testimony we are led to believe this issue was in the case. There was an entire omission from the charge of any reference to this subject. No specific exception because of the omission was presented, but the special charge requested called the court's attention to the omission. (See Boaz v. State, 89 Texas Crim. Rep. 515, 231 S. W. 790; Parker v. State, No. 7255 not yet officially reported.

For the reasons given the rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*